[Crim. No. 2061. Fourth Dist. Apr. 22, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RUSSELL LEE WHITE, Defendant and Appellant.

Lawrence W. Novack for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mitchell S. Shapiro, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.—Defendant appeals from a judgment of conviction for a violation of Penal Code, section 487 (grand theft). Defendant's application for probation was denied and he was sentenced to state prison for the term prescribed by law.

In the morning of Saturday, February 10, 1962, the manager of a café in San Bernardino County placed a sum of $1,075 or more, constituting the receipts from the previous 24 hours' business, into a bag which was then placed by him in a safe of which two other employees besides himself knew the combination. On Monday morning, February 12, 1962, the manager discovered that some $900 had been removed from the bag. The manager, as well as the cashier and the chef (the other two employees with knowledge of the combination) each testified that he or she had not removed any money from the bag. The cashier and the chef had each gone into the safe at some time during the relevant period.

During all of the relevant period, the defendant was a dishwasher in the café, working the 10 p.m. to 6 a.m. shift, and one of some 18 employees who would daily have had to enter the room where the safe was to check in and out of employment.

The money placed in the bag by the manager was paper currency in denominations of $5, $10, $20 and possibly one of $50.

On Tuesday morning, February 13, 1962, defendant purchased a car at a used car lot for $475 plus sales tax and license fee, paying down $5. He returned in the afternoon when he paid the balance in cash, part of which was a bank note of $50. The receipt for payment in full was antedated 30 days at defendant's request. The salesman was told, in explanation, that the father or grandfather of defendant had promised to reimburse him for the price of a car if he should buy one.

Defendant was interviewed by a San Bernardino County deputy sheriff on February 26 and 28; on April 5 in Kern County he was interviewed by two San Bernardino County deputies, to whom he made an oral confession and one in writing admitting that he had removed some $900 from a bag in the safe of the café and from it had paid for the car. The defendant also identified from photographs (People's Ex-

hibit 4) the location in the safe of the bag from which he took the money.

In the April 5 interview, the defendant admitted the falsity of an earlier statement made by him that an anonymous donor had left an unmarked envelope containing some $450 in defendant's mailbox, which money was used to pay for the car. The defendant said also that he had been given about $30 when he was released from prison.

The April 5 interview opened in the following manner: "Mr. White was brought in by an officer and sat in the room where myself and Detective Abernathy and Sergeant Shull were and Mr. White greeted us and smiled and said, I could have told you guys about this the first time you talked to me and I told him that he had given statements regarding it and we would appreciate it if he would give us statements regarding this theft and he stated he would do so. . . ."

The interview lasted from one and a half to two and a half hours. The evidence was ample that defendant's confessions to the officers were freely and voluntarily made.

The record is silent as to the giving by any of the officers of any advice to the defendant as to his constitutional absolute right to remain silent, and to have the benefit of counsel. The confessions were admitted into evidence without objection.

There was evidence, also, of a witness identified only as Edward M. Callahan, to whom, on February 26, 1962, defendant told the story of having been left money by an anonymous donor with which the car was paid for, and to whom at the same time defendant stated that there was supposedly $900 taken in the theft. To the same witness defendant, on April 5, 1962, indicated that he was guilty of theft of $900 from the café.

No evidence was presented on behalf of defendant.

### DEFENDANT'S CONTENTIONS

Defendant cites and relies upon *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and on the case with which it claims filial relationship, *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], in his contention that his oral and written confessions were inadmissible under the ruling in *Dorado,* and that their admission constituted prejudicial error of an uncleansable kind.

Defendant contends further that the trial court erred in giving to the jury CALJIC Instruction No. 29-B, Alternate, revised, containing the following language: "The fact that a

defendant was under arrest at the time he made a statement or that he was not at the time represented by counsel or that he was not told that any statement he might make could or would be used against him or that he was told that others had made statements implicating him in the crime, will not render such statement involuntary.''

Let us consider first the application of the ruling made in *Dorado* to the case at bench.

Dorado appealed from an automatic death sentence. At the time he confessed, he was a man not under detention as a suspect, but a prisoner serving a life sentence who was subjected to interrogation by the prison authorities under whom he was serving that sentence. At his trial, it was established by affirmative evidence that he was not advised of his constitutional rights to counsel and to remain silent. The officers who took his statement testified as to its voluntary nature and its freedom from inducement; contrarily, the defendant testified that he fabricated the confession because it was threatened that he would be put into the prison yard with other convicts to be dealt with by them as an informer; that he was promised a reduction of the possible charge against him; that he was emotionally upset because of the death of his friend, whom he was charged with murdering; and that he was under the intoxicating effects of glue sniffing.

The Supreme Court followed the trial court's finding that the confessions of Dorado were not obtained by coercion. Nevertheless, there existed in the setting of the evidence that conflict on the subject of voluntariness which is emphasized by the following language from the dissenting opinion of Mr. Justice Douglas in *Crooker* v. *State of California* (1958) 357 U.S. 433, 443-444 [78 S.Ct. 1287, 2 L.Ed.2d 1448], quoted in footnote at 62 Cal.2d 375 [42 Cal.Rptr. 188, 398 P.2d 380] (*In re Lopez*): '' 'Law officers usually testify one way, the accused another. . . . The mischief and abuse of the third degree will continue as long as an accused can be denied the right to counsel at this the most critical period of his ordeal.' ''

We will not discuss the relation of the present case to *Escobedo*. Whatever the limits of the rule therein enunciated, they have been engulfed by the ruling in *Dorado*.

 In the case at bench, the confessions given to the deputy sheriffs were given at their request, and clearly because the officers then had drawn the bead of their suspicions on the defendant only. So far the circumstances match those in

*Dorado.* In all of the other respects existing in *Dorado* and mentioned above, the instant case differs.

There is present here also the independent confession made to the witness Callahan, not identified as a peace officer.

 The Attorney General argues that it was the duty of the officers to give the admonitions, and that where the record is silent, a presumption exists that they did their duty, citing Code of Civil Procedure, section 1963, subdivisions 11, 15, 33; and *Vaughn* v. *Jonas,* 31 Cal.2d 586, 601 [191 P.2d 432]. The rule has been extended to criminal trials. (*People* v. *Farrara,* 46 Cal.2d 265, 269 [294 P.2d 21], and cases there cited.)

Concerning this argument, it may be said that if it was the duty of the officers on April 5, 1962, to give the admonitions, it was a duty of which they must have been unaware.

There is doubt that an officer has an absolute duty to admonish a defendant as to his rights, just as it is doubtful that an officer has a duty to abstain from making promises or offering inducements of a noncoercive nature preliminary to obtaining a statement from a prisoner, so long as the officer does not intend to use the statement in a trial against such person, or as the basis for proceedings against him.

The Attorney General argues further that we should not go beyond the record, and that an appellate court is not to assume error on appeal.

All these arguments of the Attorney General are met and disposed of by the decision in *People* v. *Stewart* (California Supreme Court), 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97], filed March 25, 1965.

 In *Dorado,* the court said, at page 352: "Although in the instant case defendant could have waived his right to the assistance of counsel, we can find no waiver here in the absence of evidence that he knew of his right. . . .

"In the absence of evidence that defendant already knew that he had a right to counsel during interrogation, the failure of the officers to inform him of that right precludes a finding that he knowingly waived it."

 Under the holding in *People* v. *Kitchens,* 46 Cal.2d 260, at 261 [294 P.2d 17], the appellant may take advantage of a rule enunciated after the trial and more than two years after the confessions were made.

By analogy to the ruling in the same case of *Kitchens,* the failure to make objection in the trial court will not affect defendant's right to be protected by *Dorado.*

 The antiseptic conditions under which a confession

has been obtained are required to be shown prima facie by evidence of voluntariness.

In many of the cases cited in support of this proposition elements of involuntariness appear from evidence produced by defendant: *People* v. *Underwood,* 61 Cal.2d 113 [37 Cal. Rptr. 313, 389 P.2d 937]; *People* v. *Trout,* 54 Cal.2d 576 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418]; *People* v. *Berve,* 51 Cal.2d 286 [332 P.2d 97]; *People* v. *Rogers,* 22 Cal.2d 787 [141 P.2d 722]; see also *People* v. *Atchley,* 53 Cal.2d 160 [346 P.2d 764] and *People* v. *Nagle,* 25 Cal.2d 216 [153 P.2d 344]. (In the latter two cases, the trial court's determination as to the voluntariness of the confession for admission was sustained on appeal.)

In another category, elements of involuntariness appear from testimony of the prosecution or from a transcript of the interview proceedings in which the confession was given. (*People* v. *Jones,* 24 Cal.2d 601 [150 P.2d 801]; *People* v. *Loper,* 159 Cal. 6 [112 P. 720, Ann. Cas. 1912B]; *People* v. *Speaks,* 156 Cal.App.2d 25 [319 P.2d 709]; *People* v. *Clark,* 55 Cal.App. 42 [203 P. 781].)

Finally, there are those cases which declare the rule as set forth above and in which a confession was admitted upon preliminary testimony that the confession was free and voluntary, without threat or offer of reward or immunity or any other form of inducement, without denial by defendant. (*People* v. *Siemsen,* 153 Cal. 387 [95 P. 863]; *People* v. *Miller,* 135 Cal. 69 [67 P. 12].)

It is of passing interest that in *People* v. *Loper, supra,* 159 Cal. 6, 14, decided in 1910, the Supreme Court noted that: "The transcript does not show that at any time the defendant was instructed with reference to his rights under the constitution, nor was he told that statements made by him might be used against him at his trial."

In *People* v. *Speaks, supra,* 156 Cal.App.2d 25, the court said at pages 38-39: "She [defendant] was never informed of her constitutional right to remain silent, even by the deputy district attorney whose duty it was to protect her rights. Not even a gesture toward getting Mr. Butcher or any lawyer for her was made."

Bearing some factual resemblance to *Massiah* v. *United States* (1964) 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246], *People* v. *Rogers, supra,* 22 Cal.2d 787, decided in 1943, rejected a confession made to one, not a police officer, who was an agent of the police for that purpose.

In addition to the requirement of voluntariness as a basis for the admission of a confession, *Dorado* demands an affirmative showing that a defendant had knowledge of and had waived the rights to counsel and of absolute silence.

It is arguable that the rule of exclusion declared in *Dorado* should not be extended outside of a situation from which the reason for the rule has sprung; that is, a situation in which the defendant himself denies the making of the statement, or denies its truthfulness, or claims that the statement was elicited as the result of matter which would deprive it of voluntariness. In such a situation, if the defendant has not been advised of his constitutional right to counsel and to remain absolutely silent, the issue of voluntariness could not be passed upon. Does the reason for the rule exist where there is nothing in the evidence produced by either side to suggest that the statement was either involuntary or untrue, and where the defendant may even admit the truth of the matters contained in the statement? There are cogent reasons to apply the rule of *Dorado* when a confession and the circumstances under which it was made are the subject of conflicting testimony. There may be equally cogent reasons for denying an automatic application to cases which were tried before either *Escobedo* or *Dorado* was decided and where the voluntariness of a statement or its truth has not been called in question.

■ Such, however, is not the import of *Dorado*. In its constitutional aspects, *Dorado's* thrust is two-pronged:

First, it intends to secure to an accused the right to counsel provided by the Sixth Amendment to the Constitution of the United States at all stages of a prosecution and fixes the opening stage as the moment when the accused becomes such in fact, even though the fact be not disclosed by the police. At that stage the constitutional right to counsel is a reality, whether or not the accused makes a statement, and whether or not he is asked to make a statement.

Second, it intends to secure the accused in his right, under the Fifth Amendment of the Constitution of the United States and section 13 of article I of the Constitution of California, not to be compelled to be a witness against himself.

■ At the point where possible threat to the right to counsel and possible threat to the right against self-incrimination fuse, in the case of one in custody at the accusatory stage, *Dorado* confronts the police with the choice of advising the accused of his constitutional rights, or of being unable to use as evidence against the defendant any statement that he might make.

Either or both of these rights may be waived; but apparently the right against self-incrimination may not be waived without benefit of counsel unless the right to counsel has itself been waived. Since a prerequisite condition of waiver of either right is knowledge thereof, such knowledge will not be presupposed in the absence of evidence of the giving of the admonition by the police.

It is only at the point that a statement voluntarily made is to be used in evidence that the constitutional bar rises in favor of a defendant to exclude the statement if he had not been advised of his constitutional rights and had not waived them.

It is logical that at the trial a defendant might waive his right to object to the admission into evidence of a voluntary statement obtained without a waiver of his rights to counsel and absolutely to remain silent, so as to permit the statement to be admitted into evidence.

Such waiver, however, must be consciously made with full knowledge of the right to object successfully to the admission of the offered evidence; in other words, by one who at the time of waiver knew of the import of *Dorado*.

The District Courts of Appeal in numerous decisions since *Dorado* all hold that failure to object to the offered evidence at a trial held prior to *Dorado* does not amount to a waiver of the rights of a defendant as defined in that decision.

In the case of a voluntary statement, it is only one obtained by the police or their agents and at the accusatory stage or later which is inadmissible. If the statement be voluntary and given to the police in the investigatory stage, it may be admitted. It may be admitted into evidence if it be voluntary and not given to the police or their agents, nor procured by the connivance of the police for their use, even though the defendant be in custody and regardless of the stage of the proceedings at the time of making the statement.

In *Dorado*, the Supreme Court sought to do more than insure the voluntariness of any statement before it might be received in evidence, and attempted more than the policing of the police in their investigatory methods. It has gone beyond the particular factual situation to declare that the police authorities, and only the police authorities, may not hope to use as evidence any statement, though wholly voluntary, made by an accused in custody when the accusatory stage has been reached, unless such accused has waived his right to counsel and his absolute right to remain silent; and that such waiver will not be inferred in the absence of affirmative

testimonial evidence that the defendant knew or was advised of his constitutional rights; and that only a statement made voluntarily and with full knowledge of such rights and fact is admissible in evidence.

We are compelled to hold that the receipt into evidence of the oral and written confessions of defendant given to the sheriff's deputies on April 5, 1962, was error under *People* v. *Dorado, supra.*

We should determine also whether the improperly admitted confessions were such an important part of the total evidence as to make the error incurable. That they were such a weighty part is clear. The suspicious and other circumstances alone could not have sustained a conviction; the same circumstances coupled with the confession made to the independent witness Callahan would have been sufficient. Yet the powerful effect of the detailed oral and written confessions to the police and the two photographs marked People's 4 in evidence must have had a compelling effect.

The court said in *People* v. *Dorado, supra,* at page 356: "Although under some circumstances the introduction into evidence of statements obtained from a defendant during police interrogation in violation of his right to counsel and his right to remain silent may constitute harmless error, we are convinced that the error is necessarily prejudicial when the statements are confessions. . . .

". . . . . . . . . . .

"The improper introduction of the confession which has been obtained in violation of the constitutional right to counsel transgresses the protection of due process no less than the illegal introduction of a confession which has been coerced. In either case courts cannot inquire into the prejudicial nature of the introduction of an illegally obtained confession. . . ."

### CLAIMED ERROR ON INSTRUCTING JURY

The instruction as given was a correct statement of the law. *Dorado* itself distinguishes between an involuntary statement and one given by a defendant who has not been advised of his constitutional rights.

The jury cannot have been misled by the instruction as given because there was no evidence one way or another as to defendant's having been advised of his constitutional rights; and the jury was not given any instruction which could have influenced them to believe that he had or had not been so advised.

While some modification of the instruction is called for in view of recent developments, there was no error in the giving of it when it was given.

The judgment is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.