**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Freddie Lee CHILDRESS, Defendant-Appellant.**

**No. 14881.**

United States Court of Appeals Seventh Circuit.

June 29, 1965.

Donald A. Schabel, Indianapolis, Ind., for appellant.

Richard P. Stein, U. S. Atty., David W. Mernitz, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Freddie Lee Childress, defendant, has appealed from a judgment of conviction on the verdict of a jury, of armed robbery of a clerk in charge of a postal contract station of the United States, at

Indianapolis, Indiana, on or about May 22, 1964 in violation of 18 U.S.C.A. § 2114. He was sentenced to imprisonment for a term of 25 years.

1. His court-appointed counsel contends that the use of incriminating statements obtained in violation of defendant's constitutional rights constituted plain error requiring reversal.

Counsel's principal reliance is on Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).[1]

Defendant was arrested at his home in Indianapolis on June 3, 1964. Later that day he was interrogated at city police headquarters by postal inspector Freeman, investigator Leonard of the postal inspection service and sergeant Gibbs of the Indianapolis police department. During these events defendant did not have counsel present and did not request counsel or an opportunity to consult with a lawyer.

In Escobedo, at 490–491, 84 S.Ct. at 1765 the court said:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, *the suspect has requested and been denied an opportunity to consult with his lawyer,* and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth

Amendment,' Gideon v. Wainwright, 372 U.S., at 342 [83 S.Ct. at 795, 9 L.Ed.2d 799], and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." (Italics supplied.)

■■ The record before us does not show that defendant ever requested, or was ever denied, an opportunity to consult with a lawyer. Hence the principle announced in Escobedo has no application in the case at bar. Moreover, the argument made on defendant's behalf that there can be no presumption of a waiver of counsel, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), is not applicable to this case, because, unless his right to counsel was established by the denial of a request by defendant for an opportunity to consult with his lawyer or a lawyer, he had no such right which could have been the subject of a waiver.

2. We agree with the statement of defense counsel in his brief that at the trial the testimony of postal inspector Freeman that defendant denied being in town on the night of May 22, 1964 was damaging to the defendant's case, "since all other evidence showed that he was in town". We note, as pointed out by defendant's counsel, that the court instructed the jury that if they found "that the defendant made such statement, if any, voluntarily with knowledge of its falsity, then they may consider the statement as circumstantial evidence which may tend to prove consciousness of guilt." It is in this court that defendant for the first time has raised a constitutional question in regard to the admission of this testimony, claiming that although it "was inadmissible * * * under the Fifth and Sixth Amendments

[1]. The government's brief ignores Escobedo entirely. However, in view of the fact that Escobedo was decided on June 22, 1964 and the judgment of the district court, from which the present appeal has been taken, was entered on October 15, 1964, we feel justified in applying the holding in Escobedo to this case. We also point out that the alleged statements by defendant, said to have been obtained in violation of his constitutional rights, were made on June 3, 1964 and were used at his trial on October 14, 1964.

to the Constitution of the United States, no objection on this ground" had been made at the trial.

On the constitutional issue now raised for the first time, we cannot say that defendant now has a right to have us pass upon the admissibility of the aforesaid testimony under rule 52(b) of the Federal Rules of Criminal Procedure. 18 U.S.C.A. rule 52(b).[2]

3. As we are now alluding to the whereabouts of defendant on the night of May 22, 1964, we will also consider his claim that the court erred in denying his request to modify the following given instruction:

"Flight of an accused, after a crime has been committed, does not create a presumption of guilt. It is, however, a circumstance which may tend to prove consciousness of guilt, and should be considered and weighed in connection with all the other evidence. If you find that the defendant left the State of Indiana shortly after the alleged crime was committed, you may give such fact whatever weight seems to you to be justified, depending upon the motives which prompted it, and all of the surrounding facts and circumstances."

The defendant's request was that the court add thereto the following:

"including the fact that the accused voluntarily returned to the State of Indiana."

Substantially, the instruction, as given, was suggested by the Seventh Circuit Judicial Conference Committee on Jury Instructions in its manual, 33 F.R.D. 523, 586, § 6.11 (1963).

We hold that, under this instruction, as given, the jury could properly consider the "voluntary return of the accused to the State of Indiana" if they found such to be a fact. Defendant's proffered amendment, by assuming as a fact that the accused voluntarily returned

to the State of Indiana, would have been an invasion by the court of the province of the jury in determining the facts.

This fundamental view is recognized in United States v. Manuszak, 3 Cir., 234 F.2d 421, 424 (1956), where the court said:

"* * * A partial direction of the verdict occurs when the court determines an essential fact, and this denies the appellant trial by jury. See Bollenbach v. United States, 1946, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350; United States v. Gollin, 3 Cir., 1948, 166 F.2d 123, 125–126; United States v. Raub, 7 Cir., 1949, 177 F.2d 312, 315–316; Carothers v. United States, 5 Cir., 1947, 161 F.2d 718, 722."

We feel that the instruction in the case at bar had been carefully drawn, so that no prejudice can be said to have resulted to the defendant therefrom.

4. Defendant contends that the evidence is insufficient in law to sustain a conviction for the offense charged in the indictment.

At the close of the government's case, defendant moved for a judgment of acquittal, pursuant to 18 U.S.C.A. rule 29(a). The motion was denied and the defendant failed to renew such motion at the close of all the evidence. In this situation, the sufficiency of all the evidence to support the verdict was not presented to the district court and therefore defendant cannot raise it on appeal to this court. United States v. Calderon, 348 U.S. 160, 164, 75 S.Ct. 186, 99 L.Ed. 202 footnote No. 1.; United States v. Manos, 3 Cir., 340 F.2d 534, 536–537 (1965).

5. Moreover, this court has no right to weigh the evidence or determine the credibility of witnesses. The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. Glasser v. United States, 315

---

2. "(b) *Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they wre not brought to the attention of the court."

U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). And we must resolve evidentiary conflicts in the government's favor. United States v. Carter, 7 Cir., 326 F.2d 351, 352 (1963).

In the light of these decisions, we consider defendant's contentions as to the insufficiency of the evidence to sustain a conviction.

First, defendant argues that the government failed to prove that the money taken was in the lawful charge, control or custody of Albert Cohen, named in the indictment as a clerk in charge of Postal Contract Station No. 31 located in Steeg's Super Drugs, Inc., 1350 W. 16th Street, Indianapolis, Indiana.

John E. Steeg testified that he was president of the corporation which owned and operated the drugstore and he identified an exhibit in evidence as his agreement to conduct a postal contract station therein. Defendant's counsel in this court contends that the agreement shows that it was signed, not by a corporation, but by John E. Steeg, Jr., an individual. However, postal inspector Freeman testified that, on the morning following the robbery, he and a financial examiner from the Indianapolis Post Office jointly audited "Postal Station 31".

This evidence, together with other facts in evidence which it is not necessary to set out at this point, are sufficient to constitute at least prima facie evidence that a United States postal contract station existed where Cohen was employed and where defendant appeared and conducted a robbery with a gun.

Nevertheless, defendant's counsel argues that the agreement for the station provided for a bond and that there was no proof that it was furnished. However, Steeg testified that this contract had been accepted on behalf of the postmaster general and that Cohen had been designated as in charge of that "postal contract station No. 31".

6. Cohen identified defendant as the bandit who held him up. In addition, Lulabell Scott, who was a government witness, testified that she was the divorced wife of defendant and that he had access to the gun used in the robbery, but on the evening of the robbery he called to tell her that her gun had been dropped and instructed her to report it stolen.

■ We hold that there was substantial proof constituting at least prima facie evidence of these facts and that this evidence is sufficient in law to sustain the conviction now under attack.

7. At the conclusion of Lulabell Scott's direct examination, defense counsel, in reliance on the Jencks Act, 18 U.S.C.A. § 3500, demanded that the government produce all previous statements by her, as well as her testimony before the grand jury. Such a statement and said testimony were turned over by the government to defense counsel, and the court respectively. The court examined the grand jury proceedings *in camera* and denied the motion to permit inspection by defense counsel on the ground that "there is no substantial deviation in testimony as given by the witness before the grand jury and as given here".

■ The district court properly considered defendant's contention and made an *in camera* inspection of the grand jury testimony before making the ruling now complained of. No suggestion has been made by counsel for defendant that in so doing the district court acted improperly or exceeded its authority. We have a right to and do assume that the judge of that court in performing that duty acted conscientiously, carefully and with due regard to the rights of defendant as well as the government. Therefore, under all these facts and circumstances, we would not be justified in setting aside the judgment of conviction herein because of the denial of defendant's motion that the government be required to produce for examination the transcript of Mrs. Scott's testimony before the grand jury.

In this case we appointed Mr. Donald A. Schabel to represent defendant in this court. Mr. Schabel has rendered

diligent and able service in that capacity, for which we express our appreciation.

For these reasons the judgment from which this appeal was taken is affirmed.

Judgment affirmed.