FERNANDO RIVERA ESCUTÉ, Petitioner, *v.* GERARDO DELGADO, WARDEN OF THE STATE PENITENTIARY, Respondent.

No. HC-64-26. Decided October 26, 1965.

748

Santos P. Amadeo, Richard Ramos Algarín and Guillermo Bird
 Martínez for petitioner. J. B. Fernández Badillo, Solicitor
 General, and Rodolfo Cruz Contreras, Deputy Solicitor General, for respondent.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Once again the conviction of this defendant of murder in the first degree is open to examination. When petitioner's confession, elicited during the interrogation to which he was submitted by the district attorney while detained under police custody, was offered in evidence in his criminal prosecution, the defense objected to its admission, among other reasons, because, he said, the confession was obtained in violation of petitioner's constitutional right to have counsel in the investigation or in the preliminary examination at the time he appeared before the district attorney, without having

intelligently waived such constitutional right. (Cr. Rec. No. 5355, D.C.S.J., pp. 38, 76.) In admitting the confession in evidence the trial judge stated that defendant had no right in Puerto Rico to have counsel at that stage and that the investigation by the district attorneys was private. (*Id.*, p. 77.) This occurred in 1944. Petitioner was convicted and sentenced to life imprisonment.

On appeal before this Court he assigns as error, among others, that he was deprived of his constitutional right to assistance of counsel during the district attorney's interrogation. We disposed of the contention as it appears in *People* v. *Rivera*, 66 P.R.R. 207, 211 (1946), mostly from a rather procedural point of view of statutory nature, although we said, following *People* v. *Montes*, 64 P.R.R. 306 (1944), and *People* v. *Travieso*, 60 P.R.R. 518 (1942), that in this jurisdiction there was no constitutional provision requiring that an accused be represented by counsel prior to arraignment.

Twelve years later in *Rivera Escuté* v. *Delgado, Warden*, 80 P.R.R. 800 (1958), we had an opportunity to reexamine the same situation by way of habeas corpus. Notwithstanding the observation of normative type contained in footnote 2—p. 805—we said then, speaking, as we do now, for the Court, that we issued the writ convinced that the question raised was not decided in the appeal of the case within the constitutional framework presented in the habeas corpus, which question, if petitioner should be right, might result in the invalidation of the proceedings and of the judgment which had deprived him of his liberty for lack of due process of law, or possibly for lack of jurisdiction. 80 P.R.R. at 805.

We reexamine the validity of petitioner's conviction on the basis of his right to assistance of counsel, in the light of the following postulates of constitutional order: (1) whether pursuant to the second paragraph of § 2 of the Organic Act of 1917, then in force, petitioner's prosecution in court in 1944 and in which he enjoyed due legal assistance was void

for lack of jurisdiction, on the ground that during the investigation of the crime and prior to arraignment he was not assisted by counsel or advised of such right by the proper authorities;[1] and (2) whether that part of our system of criminal procedure which permitted the district attorney to make privately the investigation of the crime and petitioner's examination in which he made the confession, without the right to have assistance of counsel, was so manifestly in conflict with those fundamental principles of liberty and justice embodied in the due process of law of the Fifth and Fourteenth Amendments to the Federal Constitution that the subsequent proceeding in court, even with due legal assistance, was not deemed to constitute an impartial and fair trial in the light of these constitutional guarantees, and that the prosecution should be set aside. We made it clear in the same breadth (footnote 11) that in petitioner's murder trial the question had arisen as a problem of *admission* of evidence; whether his confession given in the course of an examination in which, as was known, he had no counsel was admissible; and that even if we were of the opinion that the fact itself of not having counsel when he gave his confession was a legal obstacle for its admission in evidence, in that petition for habeas corpus we could not exercise the remedial power to order a new trial eliminating the confession, unless we ruled that that fact *alone* rendered the confession *involuntary*, in which case it would be ultimately imperative, beyond any doubt, to set aside the judgment of conviction under the due process clauses. 80 P.R.R. 815.

After studying § 44 of the Code of Criminal Procedure in the light of its historical origin and having focused § 44 in its own perspective in connection with other sections of the Penal Code of California which we did not adopt to govern

---

[1] "In all *criminal prosecutions* the accused shall enjoy the right to have the assistance of counsel for his defense." Section 2 of the Organic Act of 1917.

in this jurisdiction, and having analyzed the entire procedural system of California relative to proceedings in initial stages and prior to the trial, in which proceedings, without doubt, there was from the beginning a statutory right to legal assistance consecrated also in the State Constitution, we concluded in that appeal that the step of "examination" or "preliminary hearing" like the one in California described therein and in many other states where the right to legal assistance in the course of such proceeding is unmistakably guaranteed did not exist in this jurisdiction.

We said that insofar as the philosophical reason of *John-son* v. *Zerbst*, 304 U.S. 458, as to the necessity of the intervention of counsel was a derivative of the pronouncements of *Power* v. *Alabama*, 287 U.S. 45, it could be said that the reasoning in the philosophical order was transfigured and took shape as a constitutional provision in that principle of due process requiring that a person be tried and heard before being convicted, and, as something *cosubstantial with the right of hearing*, that it be by counsel.

Regardless of what our opinion may have been as to the time when a *"criminal prosecution"* commences for other purposes, we reaffirmed then that under the right to assistance of counsel of § 2 of the Organic Act of 1917, construed in the light of the unqualified doctrine defining the equal right under the Sixth Amendment for those prosecuted in[1] the federal courts,[2] petitioner's absolute and unqualified right to assistance of counsel arose once the information was filed, which act, we said, initiated the juridical process of notifying and hearing him before final determination of his guilt or innocence, at 819. We concluded that petitioner's prosecution did not lack jurisdiction on the ground that he did not have legal aid prior to trial.

---

[2] "In all *criminal prosecutions* the accused shall enjoy the right . . . to have the assistance of counsel for his defense." Sixth Amendment.

We next delved into the problem of petitioner's confession given while he was under custody without legal assistance and which was admitted in his prosecution, in the light of the due process guarantee of § 2 of the Organic Act consecrated by the protection of the Fifth Amendment as to federal action and of the Fourteenth Amendment as to action of the different states.[3] In terms of the due process, we followed criteria affirmed in *Crooker* v. *California*, 357 U.S. 433, and *Cicenia* v. *Lagay*, 357 U.S. 504, decided just six months before, to the effect that *the bare fact* of police detention and examination in private of a person in custody did not render his confession *involuntary*, inadmissible as such under the due process, and that the denial of an express request to engage counsel did not constitute either an ingredient of coercion for the purposes of the voluntariness factor. We reached this conclusion under the second proposition discussed that our prosecution system of investigation in private by the district attorney, without the aid of counsel in that investigatory stage, did not fall per se within the margin of due process.

Notwithstanding the foregoing conclusions, we also said the following (at 824):

"We thus see that in contrast to the way we presented the problem in the light of § 2 of the afore-mentioned Organic Act of 1917, and the way it has been presented in the federal courts pursuant to the Sixth Amendment, under due process of law of either the Fifth or Fourteenth Amendment, the right to assistance of counsel is not inescapably restricted to court action. *Crooker, Cicenia, supra; Moore* v. *Michigan,* 351 U.S. 155 (1957), 2 L. Ed.2d 167; *Chandler* v. *Fretag, supra; Reece* v. *Georgia,* 350 U.S. 85 (1955), 100 L. Ed. 77. But there does not exist the absolute right under due process to enjoy legal repre-

---

[3] "That no law shall be enacted in Puerto Rico which shall deprive any person of life, liberty, or property without due process of law," § 2 of the Organic Act of 1917; ". . . nor be deprived of life, liberty, or property without due process of law.". Fifth Amendment to the Federal Constitution.

sentation or assistance in the investigatory stage of the crime, nor would the constitutional guarantee be violated upon state refusal of a request for legal aid at such stages unless, considering the fact together with other attendant circumstances and factors, the judgment of conviction is the fruit of a situation repugnant to these basic principles of liberty and justice essential to the concept of a fair and impartial trial."

The decision in *Rivera Escuté* v. *Warden* responded to the constitutional provisions governing the matter at the time it was rendered.[4]

Petitioner's conviction is open to examination once again, words which we used at the outset of this opinion, because its reexamination seemed proper in the light of the decision, six years later, of *Escobedo* v. *Illinois,* 378 U.S. 478; with greater reason in view of the unquestionable existence in petitioner's record of the basic set of facts which gave rise in *Escobedo* to the enlargement of the absolute constitutional guarantee of the Sixth Amendment to have assistance of counsel, which guarantee, as it governed, *Gideon* v. *Wainwright,* 372 U.S. 335, had already been made obligatory upon the states through the due process of law of the Fourteenth Amendment.

It is stated in *Escobedo* (at 490):

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amend-

---

[4] Affirmed by the Court of Appeals (1st Cir.) in *Escuté* v. *Delgado,* 282 F.2d 335.

The United States Supreme Court refused to review, 365 U.S. 883.

ment,' *Gideon* v. *Wainwright*, 372 U.S. at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

The *Escobedo* opinion ends with this general pronouncement (at 492):

"Nothing we have said today affects the powers of the police to investigate 'an unsolved crime,' [citation], by gathering information from witnesses and by other 'proper investigative efforts.' [Citation.] We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

The *Escobedo* decision extends the absolute right to assistance of counsel of the Sixth Amendment to the investigatory stage of the crime, under the circumstances of fact described therein. *Escobedo* also extends to the states this enlargement of the absolute right of the Sixth Amendment, through *Gideon* and of the due process of law of the Fourteenth Amendment.

Section 2 of the Organic Act of 1917, containing the assistance of counsel in criminal prosecutions and the guarantee of due process, no longer governs in Puerto Rico. It is a historical fact that the Federal Constitution, even under the previous systems of delegated powers, has not governed in Puerto Rico by its own force and effect, nor were its provisions, with a certain exception noted,[5] extended by congressional action to be effective here directly. *R.C.A.* v. *Government of the Capital*, 91 P.R.R. 404 (1964), and cases therein cited.

The Constitution of the Commonwealth of Puerto Rico guarantees to its people the right to have assistance of counsel "in all criminal prosecutions," Art II, § 11, and it also guarantees to its inhabitants the right not to be deprived of

---

[5] Act No. 362 of 1947, 61 Stat. 772.

their liberty or property "without due process of law," Art. II, § 7.

As we stated in *R.C.A., supra*:

"(4) In accepting as satisfactory the Bill of Rights of the Constitution, Congress was to presume—and in fact it is so and ought to be—that the public powers and the courts of the Commonwealth shall render effective and construe the provisions of that Bill of Rights in a manner consistent with the protection afforded to those fundamental liberties and personal guarantees by the same or similar provisions of the Constitution of the United States, and not in a smaller degree of protection, as these are or be construed and applied by the Supreme Court of the United States, both because we are a community bearing the citizenship of the United States and because the Puerto Rican people expressed their loyalty to the principles of the Constitution of the United States in the Preamble of the Constitution which they adopted as one of the determining factors of their life as a people."[6]

■ Thus, even if the Sixth Amendment may not by itself govern in Puerto Rico, and even if we are not one of the fifty states of the Union, the Commonwealth of Puerto Rico, by reason of the foregoing, should enjoy in its full force the enlarged protection guaranteeing the right to have assistance of counsel afforded by *Escobedo* v. *Illinois.*

Consequently, there should no longer prevail pronouncements such as those made in *Rivera Escuté* v. *Warden* and in prior and subsequent cases to the effect that the absolute right to have assistance of counsel in criminal prosecutions, as guaranteed at present in this jurisdiction by our Constitution and in the United States by the Sixth and the Fourteenth Amendments, does not extend at all, as a matter of law nor under any circumstance, to stages in the perse-

---

[6] In connection with above recital, we noted at the bottom (footnote 4) that our final judgments may be reviewed by the United States Supreme Court to the same extent as the state judgments. Act No. 87–189, 1961 75 Stat. 417, 28 U.S.C.A. § 1258, Rule 62 of that Supreme Court of May 30, 1963.

cution of the crime prior to prosecution, and, as a fixed starting point, to stages prior to the filing of the information in court, as we have heretofore held. Under its circumstances of fact, and for the purposes of assistance of counsel, *Escobedo* also places the *"criminal prosecution"* of the constitutional guarantees in the police headquarters. Already in *Soto Ramos* v. *Supt. Granja Penal*, 90 P.R.R. 711 (1964), four days after the decision of that case on June 22, we invited in passing the attention of the investigating authorities and of the Prosecuting Attorney to the new constitutional criterion of that decision.

■ According to the pronouncements of *Escobedo* v. *Illinois*, as stated by Mr. Justice Goldberg, which are the raison d'etre of the Court's conclusions copied above, and according to that judicial criterion which we accept as an authorized and correct interpretation of that decision and of its significance and scope, we now say that the confession of an accused or suspect or the admissions which substantially prejudice him, obtained while in custody of the police or other competent authority during interrogation for the purpose of eliciting incriminating statements, are not admissible in evidence in the "criminal prosecution" (1) if he was not effectively advised by the police or other competent authority, before testifying, of his absolute constitutional right to stand mute and not to incriminate himself; and (2) if he was not advised by the police or other competent authority, before testifying, of his right to have aid of counsel, the fact that the accused did not actually request it not relieving the prosecution from the obligation to advise him of his right to have it; or (3) if he requested to confer with an attorney and was not permitted to be thus assisted when his statement was obtained.[7]

---

[7] Mr. Justice Goldberg states, among other general considerations (378 U.S. at 484): "In *Massiah* v. *United States*, 377 U.S. 201, this Court observed that 'a Constitution which guarantees a defendant the aid of

In addition to the ruling of *Escobedo*, see *People* v. *Dorado*, the illustrative and documented opinion of Mr. Justice Tobriner speaking for the Supreme Court of California, January 29, 1965, 42 Cal. Rptr. 169, 398 P.2d 361, a convincing application of *Escobedo* v. *Illinois* making it the duty

counsel at . . . trial could surely vouchsafe no less to an indicted defendant under interrogation by the police in a completely extrajudicial proceeding. Anything less . . . might deny a defendant "effective representation by counsel at the only stage when legal aid and advice would help him." ' " (Citation.) He said that, in the context of the case, the fact that the interrogation was conducted before petitioner was formally indicted should make no difference. What happened at the interrogation could certainly affect the whole trial (citation), since rights may be as irretrievably lost, if not then and there asserted, as they are when an accused represented by counsel waives a right for strategic purposes. It would exalt form over substance to make the right to counsel, under these circumstances, depend on whether at the time of the interrogation, the authorities had secured a formal indictment (at 486). Referring to *People* v. *Donovan*, 193 N.E.2d 628 (N.Y.), he said that the Court observed that it would be highly incongruous if our system of justice permitted the district attorney, the lawyer representing the State, to extract a confession from the accused while his own lawyer, seeking to speak with him, was kept from him by the police . . . the "right to use counsel at the formal trial [would be] a very hollow thing [if], for all practical purposes, the conviction is already assured by pretrial examination," citing Mr. Justice Black in *In re Groban*, 352 U.S. 330. From *Ex parte Sullivan*, 107 F.Supp. 514, he cites: "One can imagine a cynical prosecutor saying: 'Let them have the most illustrious counsel, now. They can't escape the noose. There is nothing that counsel can do for them at the trial.' " (At 488.)

Mr. Justice Goldberg observes that the fact that many confessions are obtained during this period points up its critical nature as a "stage when legal aid and advice are surely needed." The right to counsel would indeed be hollow if it began at a period when few confessions were obtained, and observes that there is necessarily a direct relationship between the importance of a stage to the police in their quest for a confession and the criticalness of that stage to the accused in his need for legal advice. And adds: "Our Constitution, unlike some others, strikes the balance in favor of the right of the accused to be advised by his lawyer of his privilege against self-incrimination." Before making his conclusions, Mr. Justice Goldberg ends by saying that no system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens' abdication through unawareness of their constitutional rights. No system worth preserving should have to fear that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, these rights (at 490).

of the police or other authority to warn a suspect in custody, who is being interrogated for the purpose of making him confess or incriminate himself, of his right to assistance of counsel, even though he had requested none, a decision which the Supreme Court declined to review, 381 U.S. 937, 946; *State* v. *Neely*, January 27, 1965, 398 P.2d 482, in which the authorities having warned defendant of his right not to incriminate himself and to remain silent—as in the case of petitioner herein—the Supreme Court of Oregon held that the confession was inadmissible in the light of *Escobedo* because he was not also advised of his right to assistance of counsel, and that both warnings should coexist. It is logical that it be so since the legal aid or orientation is necessary precisely to enable the suspect to understand the warning on incrimination and its consequences, and to effectively waive or not his right. In the same sense, *State* v. *Adams*, 400 P.2d 556 (Ore.), May 1965; and the Supreme Court of Rhode Island in *State* v. *Dufour*, 206 A.2d 82, 85, January 1965; and in *State* v. *Mendes*, 210 A.2d 50, May 1965, in which the waiver of the right is discussed; *People* v. *Schader*, 44 Cal. Rptr. 193, 401 P.2d 665, May 11, 1965; *People* v. *Stewart*, 400 P.2d 97, in which the Supreme Court of California discusses and defines the concept "interrogation that lends itself to eliciting incriminating statements from the suspect," and points out at what time the investigation is no longer a general inquiry; *People* v. *Anderson*, 394 P.2d 945. See in the same sense as *Dorado: Otney* v. *United States*, 340 F.2d 696, 701–02 (10th Cir.); *Queen* v. *United States*, 335 F.2d 297 (D.C. Cir.); *Johnson* v. *United States*, 344 F.2d 163, 165; *United States* v. *State of New Jersey*, 351 F.2d 429 (3d Cir.), decided May 5, 1965; *Commonwealth* v. *Negri*, 198 A.2d 595 (Pa.), decided March 17, 1964. *Cf. Rainsberger* v. *State*, 399 P.2d 129 (Nev.), in which afterwards defendant entered a guilty plea at the trial with due assistance of counsel and the confession was used only

to determine the degree of the crime and the penalty; *cf.*
*Vorhauer* v. *State*, 212 A.2d 886 (Del.), July 27, 1965.

*Jackson* v. *United States*, 337 F.2d 136 (D.C. Cir.), *cert.
denied*, 380 U.S. 935, upheld the admission of a voluntary
confession given without assistance of counsel. The Court of
Appeals places emphasis on the fact that on three different
occasions prior to testifying, to wit: at the very moment of
his arrest by a federal investigation agent, then by the
United States Commissioner upon being taken before him,
and the third time by the District of Columbia police, the
defendant was warned of both rights, not to incriminate
himself and to have assistance of counsel, before confessing.
Even so, the reasonings of Judge Fahy in his elaborate dis-
senting opinion are rather impressive. In a similar sense,
*Payne* v. *United States*, 340 F.2d 748 (9th Cir.). In *Davis* v.
*North Carolina*, 339 F.2d 770 (4th Cir.), a federal habeas
corpus against a state conviction, the Court of Appeals says
that the facts are different from those in *Escobedo*. See, how-
ever, the strong and reasoned dissent of Judges Sobeloff and
Bell, pp. 780–82. Compare the situation in *People* v. *Gunner*,
205 N.E.2d 852 (N.Y.), March 11, 1965.

■ Under the circumstances recited above, namely, when
the investigation shifts to accusatory and is focused on a
particular suspect for the purpose of eliciting a confession,
*Escobedo* indicates that the adversary system begins to op-
erate. Having shifted to *adversary*, it is the duty of the
police or other competent authority to warn him of his con-
stitutional right to remain silent and not to incriminate him-
self and of his constitutional right to have then and there
assistance of counsel and to be permitted to have it.

■ "Views have been expressed to the effect that the right
guaranteed by *Escobedo* does not apply in other cases if the
circumstance that the accused retained an attorney and was
not permitted to confer with him is not identically repro-
duced. *Cf. People* v. *Gunner*, *supra* (footnote 4), *infra*. That

circumstance must be thus set forth because those were the facts in *Escobedo*, but it seems clear to us that the pronouncements of the opinion, which are the doctrinal basis of the right guaranteed thereby, transcend that circumstance. Mr. Justice Tobriner describes the situation with clarity in saying in *Dorado* that the right to counsel matures at this critical accusatory stage; the right does not originate in the accused's assertion of it; and further on, in saying that *Escobedo* did not treat the request for counsel as the reason for the establishment of the right, but determined that the right had previously crystallized in the accusatory stage. Any doubt on this approach would be dissipated by the statements of Mr. Justice White in his dissent in *Escobedo*, with whom Mr. Justice Clark and Mr. Justice Stewart joined, 378 U.S. at 495, 496, and by *Carnley* v. *Cochran*, 369 U.S. 506. In *Carnley* the Supreme Court said by analogy that it was settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request. The request for counsel is a formalism on which the accused's right cannot be made to depend. "We held that when the Constitution grants protection against criminal proceedings without the assistance of counsel, counsel must be furnished whether or not the accused requested the appointment of counsel." *Massiah* v. *United States*, 377 U.S. 201.[8]

---

[8] We are aware that there is a difference of views with other courts regarding the application and extent of *Escobedo* v. *Illinois*. *Cf. People* v. *Hartgraves*, 202 N.E.2d 33, in which Illinois says (at 36) briefly that they do not "read" the *Escobedo* case as requiring the rejection of a voluntary confession (after arrest and while in police custody) because the State did not caution the accused of his right to have an attorney and not to incriminate himself, stating that it did not appear from the record that the defendant requested assistance of counsel. *Cf. United States* v. *Childress*, 347 F.2d 451 (7th Cir.); *Kennedy* v. *United States*, 353 F.2d 462 (D.C. Cir.), September 9, 1965; *Cephus* v. *United States*, 352 F.2d 663 (D.C. Cir.), June 21, 1965.

See New Jersey's position in *State* v. *Blanchard*, 207 A.2d 681, and the situation in *People* v. *Gunner*, *supra*. Whatever the value of those views in the light of the pronouncements of *Escobedo*, *Massiah*, and *Carnley*,

■ We do not decide that every admission or confession voluntarily given and admissible should be excluded, without any distinction, because it was not given with assistance of counsel. Each case must be decided on its own facts and circumstances. We already anticipated in *Soto Ramos* v. *Supt. Granja Penal, supra,* that "The decision of *Escobedo,* made in the light of the facts and circumstances of that case, does not bind us constitutionally to overrule *Rivera under the general criterion that every confession obtained extrajudicially without assistance of counsel invalidates the prosecution in which it was used,* independently of the·circumstances in which such confession was obtained or given." (Italics ours.)

■ ■ We hold that a suspect detained in an accusatory stage should be warned of such rights before extracting a confession or admissions which substantially incriminate him, and, in the absence of those warnings and if he is permitted to have assistance of counsel if he wishes it by reason of his constitutional right, the confession is inadmissible in his prosecution. The decision of *Escobedo* v. *Illinois* recognizes that the.suspect or accused may intelligently and diligently waive such rights in those pretrial stages as well as at the trial. In this sense each case will be decided also on its own facts and circumstances, as well as in any other waiver of fundamental rights, but unquestionably the absence of legal aid and counsel for a diligent and intelligent waiver of such counsel and aid shall at the same time constitute a major factor in determining the propriety of the waiver itself.[9]

---

*supra,* and cases therein cited, those positions are not as persuasive as that of those courts which we prefer to follow, particularly in the light of Rule 4 of the Rules of Criminal Procedure of 1963 and Rules 6(b) and 22(a) and (b).

[9] Under the present circumstances in which *Escobedo* has transferred the constitutional right to assistance of counsel to ˙stages prior to the formal arraignment in court and to police headquarters, feasible methods should be made available to guarantee the exercise of the constitutional

The record of petitioner herein shows that for some time he was under arrest in police custody; that he was submitted by the police to interrogations which produced confessions, the one taken in writing by prosecuting attorney Aponte being the fourth confession of his participation in the crime; the prosecuting attorney informed him in the usual and customary manner of his right not to incriminate himself; he did not have there assistance of counsel; the investigation had already clearly shifted to accusatory; and at all times the prosecuting attorney treated him as an accused.

We are bound by the facts in the record to consider a second aspect of the case: whether the exclusionary rule of *Escobedo* must be extended, by way of collateral attack, as in the present appeal, to petitioner's judgment of conviction which had already become final and unappealable before that decision was announced on June 22, 1964. Otherwise stated, whether the constitutional pronouncement of *Escobedo* v. *Illinois* has retrospective effect.[10] The decision depends on several factors to be evaluated.

■ According to the doctrinal criterion examined, and in the light of the pronouncements of the more recent case of *Linkletter* v. *Walker*, 381 U.S. 618, decided June 7, 1965, we hold that the rule announced in *Escobedo* which under certain circumstances excludes the confession—by reason of the constitutional guarantee of right to counsel which it expands—does not apply retroactively, by way of annulment of the prosecution or of granting a new trial, to prior cases which had already become final when the exclusionary rule of evidence was announced.

---

right without disabling the function of persecuting the crime, particularly in the case of a suspect or indigent person having no resources to engage legal services and wishing to exercise his constitutional right to have the aid of counsel at these stages prior to his criminal prosecution.

[10] The cases cited above involved direct attacks on the judgments by means of appeal or review of unsolved cases at the time of the *Escobedo* decision.

764

■ *Linkletter* v. *Walker*, like this appeal, is an indirect attack by habeas corpus which puts an end to the problem of retroactive application or not of *Mapp* v. *Ohio*, 367 U.S. 643, a question which had seriously divided the juridical thinking in the United States.[11] In *Mapp* v. *Ohio* it was held, overruling the decision in *Wolf* v. *Colorado*, 338 U.S. 25, that the due process of law of the Fourteenth Amendment required the *states* to exclude from the trial evidence obtained in violation of the guarantee of the Fourth Amendment against illegal searches. *Linkletter* now decides that the *Mapp* rule excluding evidence illegally obtained in violation of the Fourth Amendment does not apply retroactively to state convictions which had become final before rendition of that decision, and explains, footnote 5, 381 U.S. at 622 and 639, what is meant by final.[12]

■ As a general orientation guide on the problem of retroactivity, *Linkletter* departs from the old doctrine identified with *Blackstone* in the sense that a subsequent ruling does not make the law, but discovers or applies it as it has always been the true law. After analyzing several precedents employing words of Mr. Justice Hughes in *Chicot County* v. *Baxter*, 308 U.S. 371, to the effect that the actual existence of the law prior to the determination of unconstitutionality is an operative fact and may have consequences which cannot justly be ignored, and that the past cannot always be erased by a new judicial declaration, Mr. Justice Clark says (1) that a change in law will be given effect while a case is on direct review, and (2) that the effect of the subsequent ruling of invalidity on prior final judgments when collaterally

---

[11] See *Linkletter*, footnote 2. Mr. Justice Clark says "and we granted certiorari in order to settle what has become a most troublesome question in the administration of justice."

[12] Where judgment of conviction has been rendered, the availability of appeal was exhausted, and the time for petition for certiorari had elapsed before our decision in *Mapp*.

attacked is subject to no set principle of absolute retroactive invalidity, but depends upon a consideration of particular relations . . . and particular conduct . . . "and of public policy in the light of the nature both of the statute and of its previous application." (At 627.)

 Further on he states that the accepted rule today is that in appropriate cases the Court may, in the interest of justice, make the rule prospective . . . and that there seems to be no impediment—constitutional or philosophical—to the use of the same rule in the constitutional area where the exigencies of the situation require such an application, and declares that *the Constitution neither prohibits nor requires* retrospective effect. Once the premise is accepted that we are neither required to, nor prohibited from applying a decision retrospective, Mr. Justice Clark points out, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation would further or retard its operation.

With a view to these general considerations and the developments subsequent to *Wolf* v. *Colorado* (1949), and cases which followed, it appears that *Mapp's* exclusionary rule responded to the failure since *Wolf*, already recognized, in compelling respect for the Fourth Amendment through other methods and remedies found to be futile to contain the incidence of police illegality.[13] Exclusion was held to be the only effective deterrent against such lawless police action.

---

[13] *Wolf* held that the Fourth Amendment's guarantee against illegal searches was enforceable against the states through the due process of the Fourteenth Amendment, but the Supreme Court did not then impose on the states the exclusionary rule of evidence illegally obtained in violation of this Amendment. In *Mapp* it did.

*Lustig* v. *United States*, 338 U.S. 74; *Stefanelli* v. *Minard*, 342 U.S. 117; *Irving* v. *California*, 347 U.S. 128; *Rea* v. *United States*, 350 U.S. 214; *Elkins* v. *United States*, 364 U.S. 206, are cited. Cf. *Rochin* v. *California*, 342 U.S. 165.

However, it is held in *Mapp* that the purpose would not be advanced by a retrospective application of the exclusionary rule. Moreover, it is observed, there are interests in the administration of justice and integrity of the judicial process to be considered. Distinction is drawn in those situations in which the Court has retroactively afforded a remedy as those which directly affect the fact of the guilt; in which the impartiality of the trial, the integrity itself of the process of adjudication of the facts of such guilt are involved; the involuntary confessions because of a "complex of values," including the likelihood that the confession be untrue, the rupture of the individual's privacy, and the abhorrence of society to the use of coerced confessions.[14]

*Linkletter* holds that though the error complained of in failing to exclude the evidence might be fundamental (the Court of Appeals held that it had been illegally obtained), it was not of the nature requiring us to overturn all final convictions based upon it.

Prior to *Linkletter* v. *Walker*, the same day of the *People* v. *Dorado* decision, January 29, 1965, the Supreme Court of California, unanimous on this point, held in a collateral attack, *In re López*, 42 Cal. Rptr. 188, 398 P.2d 380, that *Escobedo* v. *Illinois* does not call for retroactive application. The amply documented opinion, also of Mr. Justice Tobriner, offers a convincing and exhaustive study on the question of retroactivity here involved. Says the Court: "we believe that the United States Supreme Court in *Escobedo* sought primarily to prevent police tactics which, in the past, have spawned involuntary confessions. The court has concluded that presence of counsel would go far to eradicate such tactics . . . . Thus the rule contemplated the prospective pre-

---

[14] *Blackburn* v. *Alabama*, 361 U.S. 199; *Brown* v. *Mississippi*, 297 U.S. 278; *Jackson* v. *Denno*, 378 U.S. 368; *Gideon* v. *Wainwright*, 372 U.S. 335; *Griffin* v. *Illinois*, 351 U.S. 12; *Eskridge* v. *Washington*, etc., 357 U.S. 214, are cited.

vention of coercive practices—not the extirpation of such practices committed in the past."[15] (42 Cal. Rptr. 191.) Further on: "The resolution of the court in *Escobedo* to sterilize the police antechamber from the use of coercive tactics undoubtedly resulted from the realization of the inadequacy of present methods of dealing with involuntary confessions. The mere rejection of such confessions from evidence has not prevented police overreaching. Studies have shown that questionable tactics to obtain confessions or admissions continue on a widespread basis. The very difficulty of detecting the coercion that might occur during police interrogation and the vagueness of the applicable standards for such determination have been adverse factors necessitating a new approach. Thus the court in *Escobedo* sought the correction of the *conditions* which invited the coerced confessions and the attendant evils. But the new rule need not reach back to eradicate an environment entombed in the past."

█ *In re López* says that the *Escobedo* exclusionary rule did not, however, emanate from the inherent unreliability of the confessions introduced in the trials of the past or from the uncertainty of the guilt of those who had thus confessed; it emerged from the belief that secret interrogation was the source of coercion, that the opportunity for the presence of counsel would end the secrecy, and that the exclusion of the confession obtained without such opportunity would deter those tactics . . . . That the court did not seek to undo the procedures of yesterday, which despite their undesirability did not *necessarily* cause the conviction of the innocent. A new constitutional interpretation should be retroactively applied only in those situations in which the new rule protects the innocent accused against the possibility of being convicted for a crime which he did not commit.

---

[15] See Mr. Justice White's dissent in *Escobedo*, 378 U.S. at 498 *in fine*.

■ The Court also rejected the splendid myth that all constitutional interpretations are eternal verities that stretch backwards and forwards to infinity, and *In re López* concludes that because the justification of the requirement of the right to counsel at the accusatory stage lies in the prospective purpose of benefiting the overall system of criminal administration by drying up the sources of coercion, no purpose would be served by applying *Escobedo* retroactively. See in the same sense: *In re Lessard,* 399 P.2d 39, 49; *In re Shipps,* 399 P.2d 571, 573; *People* v. *Furber,* 43 Cal. Rptr. 71; and *People* v. *White,* 43 Cal. Rptr. 905, in which the *Dorado* and *Escobedo* decisions are fully applied to prior convictions and judgments of conviction but not yet final at the time of announcing the latter decision; *State* v. *Johnson,* 206 A.2d 737, 740 *et seq.* (N.J. 1964), another comprehensive exposition of the problem of retroactivity of *Escobedo* v. *Illinois.* The court, after referring to constitutional decisions calling for retroactive application, sets forth as the rule:

"Where the reliability of the guilt-determining process is seriously impugned, there is good reason for applying the new rule to a case already decided. It would offend our sense of justice to continue to incarcerate a convicted man where subsequent considerations cast grave doubts upon the reliability of the determination of his guilt. But where the conviction was obtained as a result of a procedure not considered fundamentally unfair at that time, and subsequent judicial decisions cast no substantial doubts upon the reliability of the determination already made, no compelling reason exists for disturbing a decision no longer subject to direct appeal. At the time of the defendants' trial, voluntariness of a confession was the criterion for its admission in evidence. [Citation.] Further, to fortify the reliability of a voluntary confession, independent corroborative evidence was required to sustain a conviction. [Citations.] These two requirements still assure that the issue of guilt was reliably determined." P. 744.

The Court of Appeals for the Seventh Circuit has also refused to apply retroactively the *Escobedo* decision to a con-

viction which is already final at the time of the decision of this case, in *Walden* v. *Pate*, 350 F.2d 240, decision of July 27, 1965 (collateral attack); and *Commonwealth* v. *Negri, supra* (Pa.), March 17, 1964. For similar considerations retroactive application has been denied to *Griffin* v. *California*, 380 U.S. 609, in *In re Gaines*, 404 P.2d 473 (Cal.), decision of August 20, 1965. *Cf.* the exposition in *State* v. *Smith*, 202 A.2d 669, 675 (N.J.), and in *United States* v. *Fay*, 333 F.2d 12, 15 *et seq.* (2d Cir.), illegal evidence under the Fourth Amendment.

The prosecuting attorney was not bound in 1943 to warn petitioner of his right to have assistance of counsel during his interrogation and confession, since that was not the rule of law, neither constitutional nor statutory. The law was to the contrary. In view of the contentions of physical coercion, we affirmed in petitioner's appeal, 66 P.R.R. 207, the trial court's determination that that confession was voluntary. We also held, on the basis of the record, that petitioner had understood the warning not to incriminate himself, notwithstanding his alleged deficient intelligence.

Subsequently in the habeas corpus, 80 P.R.R. 800, in which the question of coercion was not raised nor was evidence introduced independent of that of the record on appeal, we reaffirmed the views taken this time by reason of the absence of counsel and the rule therein announced, which still governs, to the effect that the absence of counsel at the previous stage could under certain circumstances violate the subsequent judicial prosecution and deny a fair and impartial trial.

Convinced as we are that the absence of counsel at the time petitioner gave his confession, as the law read at that time, did not affect the fact itself of the petitioner's guilt or innocence, since we sustained the voluntariness of the confession, there is no basis, under the principles announced hereinabove, to collaterally invalidate his conviction and to

apply retroactively the constitutional norm which we now adopt for the administration of our criminal justice, following the pronouncement of *Escobedo* v. *Illinois*.

The petition for habeas corpus is denied.

Mr. Justice Blanco Lugo concurs in the result in a separate opinion. Mr. Justice Rigau, agreeing with the majority opinion, joins the concurring vote of Mr. Justice Blanco Lugo. Mr. Justice Ramírez Bages agrees with the exception noted by Mr. Justice Blanco Lugo in his concurring opinion in which he also concurs. Mr. Chief Justice Negrón Fernández did not participate.

—O—

MR. JUSTICE BLANCO LUGO, with whom MR. JUSTICE RIGAU and MR. JUSTICE RAMÍREZ BAGES concur, dissenting.

San Juan, Puerto Rico, October 26, 1965

I concur in the result announced in the opinion of the Court (a) in adopting the norm of administration of our criminal justice to render more effective the right to assistance of counsel sanctioned in Art. II, § 11, of our Constitution, and (b) in applying that norm depending on whether a direct or collateral attack on the judgment of conviction rendered is involved.

However, I wish to fix clearly my position to the effect that I reach this result *exclusively* taking into consideration *only* the provision of Art. II, §. 7, of the Constitution of the Commonwealth of Puerto Rico guaranteeing to citizens the right not to be deprived of their liberty without due process of law. The interpretations of the Federal Supreme Court on that guarantee, couched in identical terms in the Fifth Amendment—to safeguard against federal action—and in the Fourteenth Amendment—to prevent state action—has great persuasive force in those situations in which the prob-

lem sought to be solved involves similar elements. Yet, we are not invariably bound to follow all expressions of that Court irrespective of the facts and circumstances giving rise to them. One illustration is enough. In the ambit of civil rights the American Federation is confronted with problems which are unknown in our jurisdiction, and the solutions therein provided for the protection of the rights of citizens need not necessarily be incorporated here without a careful examination of the advisability of adopting them in the light of the particular economic, social and political conditions of Puerto Rico. I contend that the Supreme Court of Puerto Rico is the one called upon to give substance to the clauses of our Constitution and to formulate the Law, by way of judicial construction, which is to govern this society.[1]

. In view of the situation we now confront, I believe that it cannot be said that Puerto Rico is using the coercive tactics to obtain confessions in police headquarters in the degree and to the extent which justified the Federal Supreme Court in adopting the exclusionary rule which culminated in the opinion delivered in *Escobedo*. However, irrespective of these considerations, I subscribe to the norm announced because I believe that it is fundamentally sound and convenient in our community and that it does not involve unsurmountable obstacles in the persecution of crime, notwithstanding the limited investigative means available to the office of the Prosecuting Attorney.

---

[1] It is well to point out that in the area of assistance of counsel this Court considered the problem many years in anticipation to *Gideon* v. *Wainwright*, 372 U.S. 335. See Appendix to the opinion delivered in *People* v. *Mojica Pedroza, ante*, p. 714.